IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONALD FOSTER,

    Plaintiff,                    No. CIV S-03-1193 WBS JFM P

  vs.

D. L. RUNNELS, et al.,

    Defendants.              <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants have violated his rights under the Eighth Amendment by limiting his access to outdoor and out of cell exercise.[1]

FACTS AND PROCEDURAL BACKGROUND

        By order filed September 22, 2005, consideration of defendants' initial motion for summary judgment was postponed so that plaintiff could gain access to and review certain

/////

---

[1] Plaintiff's other claims were dismissed by the district court by order filed September 15, 2004. In his opposition to the instant motion, plaintiff included arguments concerning his allegations that prison officials interfered with the administrative grievance process in connection with his outdoor exercise claims. However, those allegations were dismissed by the September 15, 2004 order and are therefore not addressed herein. (<u>See also</u> August 17, 2004 Findings and Recommendations at 8-9.)

1

voluminous housing records.[2] After various extensions of time, defendants have now renewed their motion for summary judgment and plaintiff has filed an opposition.

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
>
> > always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See

---

[2] Plaintiff has confirmed that only the logs from C Facility Building 3 for the period April 2002 through April 2003 are relevant to his claims herein. (December 2, 2005 Statement; see also December 27, 2005 Order at 1.)

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 US. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

On July 17, 2003, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

## UNDISPUTED FACTS

1. Plaintiff is a California prisoner serving a term of confinement following his criminal conviction.

2. On June 30, 2000, plaintiff was transferred to High Desert State Prison, level IV (HDSP-IV) from Pelican Bay State Prison (PBSP) where he had been serving a six-month aggravated term in a Security Housing Unit (SHU) for battery on an inmate.

3. Plaintiff was housed in Facility C at HDSP-IV and on July 7, 2000, a classification committee placed him in work/privilege group A2/B, effective June 30, 2000.

4. On April 28, 2001, plaintiff was moved to a work assignment as a porter in Facility C, Building 8 (PTR-C.852), and his work/privilege group was changed to AI/A.

5. On June 12, 2001, a classification committee saw plaintiff for his annual review and continued his work assignment and program.

6. On July 20, 2001, plaintiff was moved from Facility C, Building 8 to Facility B, Building 2, which resulted in his being unassigned and placed on a waiting list for a work assignment in his new building.  He was given time credits from that date to August 13, 2001.

7. On August 14, 2001, a classification committee noted plaintiff was a continuous program failure and had been refusing direct orders from correctional officers in Building 2.  The committee removed plaintiff from the waiting lists for an assignment, placed

him in work/privilege group C/C, and told him the expectations he would have to meet and the procedures he would have to follow in order to be removed from C/C status.

8. On April 30, 2002, a classification committee did an annual review, noting plaintiff's history of ten serious rules violations in the preceding year and the absence of any work performance reports because of his unassigned status and work/privilege group C/C status. The committee noted that his classification score had increased to 308 because of negative programming. Plaintiff asked to be removed from work/privilege group C/C status. The committee removed him from work/privilege group C/C status and placed him on a waiting list for a work assignment in work/privilege group A2/B effective that date.

9. On April 29, 2003, a classification committee did an annual review, noting plaintiff's history of three serious rules violations in the preceding year and the absence of any work performance reports because he was unassigned on waiting list for an assignment. The committee put him on a second waiting list and continued him in work/privilege group A2/b.

10. On May 16, 2003, plaintiff was given a work assignment and moved to work/privilege group A1/A. From May 16 to August 16, 2003, plaintiff was assigned as a Facility C inmate assistant program worker (Second Watch). Plaintiff's work hours were 7:00 a.m. to 2:00 p.m. His regular days off were Saturday and Sunday.

11. On November 16, 2003, plaintiff was placed in administrative segregation for obstructing an officer during a cell extraction.

12. On November 20, 2003, a classification committee released plaintiff from administrative segregation and returned him to the general population in Facility C. The committee placed him on a waiting list for an assignment and in work/privilege group A2/B effective that day.

13. On May 25, 2004, a classification committee did an annual review, noting plaintiff's history of seven serious disciplinary violations in the preceding year, the absence of work performance reports, and the increase in his classification score to 340 because of negative

programming. The committee placed him in work/privilege group C/C for his numerous disciplinary violations and refusal to take a cell mate and removed him from all waiting lists for an assignment. The committee told plaintiff that he would remain on C/C status a minimum of 30 days, at which time he could ask to be removed upon demonstrating that he desired to program and take a cell mate.

14. On March 10, 2005, plaintiff was placed in administrative segregation.

15. The amount of time plaintiff would have been in or out of his cell beginning in April 2002 under the movement schedules for Facility C inmates would vary depending on his custody status, work group/privilege group, and assignment status. Out-of-cell time would also depend on whether plaintiff was in administrative segregation or whether the facility or building in which he was housed was locked down for security reasons.

16. In October of 2005, plaintiff was transferred from HDSP-IV to California Correctional Institution in Tehachapi, California, where he is presently incarcerated. (October 20, 2005 Change of Address.)

ANALYSIS

In his complaint, plaintiff alleges that he is a general population inmate at High Desert State Prison and that, pursuant to a yard schedule promulgated and implemented by defendants, he is limited to ten hours of outdoor exercise every two weeks on a rotating schedule that gives four hours of outdoor exercise over two days in one week and six hours of outdoor exercise over three days the next week. Plaintiff also alleges that the only other time spent outside his cell is walking to the chow hall and taking a ten minute shower.

In his opposition, plaintiff states he only received access to the recreation yard for physical exercise a total of 4 hours one week (2 days) and 6 hours (3 days) the following week in rotation. However, plaintiff contends the amount of hours actually received were often shorter than this scheduled amount. Plaintiff contends he only received 104 hours of outside exercise from April 2002 through May 2003. As evidence of this deprivation, plaintiff cites to Exhibits B

1   and F appended to his Statement of Undisputed and Disputed Facts.  (Id., Ex. B, at 14-58; Ex. F,

2   at 68-434.)  Exhibit B is defendant Runnels' response to plaintiff's first set of interrogatories (13

3   pages), and defendant Jackson's response to plaintiff's first set of interrogatories (30 pages).

4   (Id.)  The only citation to a specific piece of evidence is a reference to Runnels' response to

5   interrogatories 5-8.  Runnels' response addressed plaintiff's outdoor exercise while he was in

6   Group A2/B.  Runnels identified plaintiff's complaint as plaintiff should have received two hours

7   of outdoor exercise a day for a total of 10 hours each week rather than the four hours of exercise

8   over two days one week and six hours over three days the following week, for a total of 10 hours

9   over two weeks.  (Ex. B, at 4.)  Defendant Runnels states that plaintiff's

> out-of-cell time was governed by HDSP Operational Procedure No. 1 and HDSP Supplement to Department Operations Manual (DOM) S2020, Attachment C.  Copies of those procedures for the time period material to the claims at issue are Attachment 1 to the Response of Defendant Runnels to Plaintiff's First Request for Production of Documents.  Those procedures were approved by me and reviewed annually by the Associate Warden, Operations.

14  (Ex. B, at 4.)  However, the attachment referenced by defendant Runnels was not provided by

15  plaintiff in his August 7, 2006 filing.

16          Exhibit F is 433 pages of housing logs.  Plaintiff has not cited to a particular page

17  of any of these housing logs in his opposition to the motion for summary judgment, his

18  supporting declaration or in his statement of undisputed and disputed facts.

19          The denial of fresh air and regular outdoor exercise constitutes cruel and unusual

20  punishment in violation of the Eighth Amendment, unless "inclement weather, unusual

21  circumstances, or disciplinary needs" make the provision of such exercise impossible.  Spain v.

22  Procunier, 600 F.2d 189, 199 (9th Cir. 1979).  In Spain, in the face of a five-month deprivation of

23  exercise, the Ninth Circuit held that "outdoor exercise [for] one hour per day, five days a week"

24  was sufficient to satisfy the Eighth Amendment.  Id; see also Allen v. Sakai, 48 F.3d 1082 (9th

25  Cir. 1995) (six-week deprivation of exercise violated Eighth Amendment, despite logistical

26  difficulties related to SHU inmates); cf. Hayward v. Procunier, 629 F.2d 599, 603 (9th Cir. 1980)

(finding no Eighth Amendment violation in temporary denial of exercise during lock-down instituted following incidents of gang violence, when exercise equivalent to that prescribed by Spain allowed again after one month).

Although prison administrators generally have broad discretion in determining whether to declare emergencies and impose lock downs to control institutional disturbances, the conditions imposed during the lock down may constitute cruel and unusual punishment under the Eighth Amendment. See Hayward v. Procunier, 629 F.2d 599, 603 (9th Cir.1980) (denial of outdoor exercise may give rise to Eighth Amendment claim for deprivation of humane conditions of confinement, a prisoner must satisfy two requirements: one objective and one subjective); Farmer v. Brennan, 511 U.S. 825, 834 (1994); Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir.1994).

"Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834; see also Wilson v. Seiter, 501 U.S. 294, 303-04 (1991). This objective component is satisfied so long as the institution "furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety." Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir.1982); Farmer, 511 U.S. at 833; Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir.1981).

The subjective requirement, relating to the defendants' state of mind, requires "deliberate indifference." Allen, 48 F.3d at 1087. "Deliberate indifference" exists when a prison official "knows of and disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 835.

a. Administrative Segregation

Defendants state plaintiff was in administrative segregation for three days in November 2003 and on March 10, 2005.

/////

Plaintiff states that administrative segregation inmates are permitted a minimum of one hour per day, two days a week, of exercise programming outside of their cells. Plaintiff states that "yard is also substituted for other out of cell exercise periods when yard is available at least three days per week for a total not less than 10 hours a week." (Pl.'s Stmt. of Undisputed Facts at 2, Ex. E.)

Plaintiff does not appear to contend that he was deprived of sufficient outdoor exercise while he was housed in administrative segregation, but rather offers evidence relating to same as a comparison to the amount of exercise provided to plaintiff while he was housed in general population.

    b.  Work/privilege group C/C

Plaintiff states he was released to C facility on March 28, 2002. Plaintiff contends that inmates in Facility C "never receive 2 hours and 15 minutes of yard on any given day and the schedule provided on Facility C movement sheet is not always followed." (Pl.'s Stmt. Undisputed Facts at 5.) Plaintiff states that while he was in work group C/C he received more out of cell time and outdoor exercise time than inmates on A1/A or A2/B group. Plaintiff states that inmates on C/C group receive "yard one hour per day, five days per week." (Id. at 6.)

Defendants state that when plaintiff was in group C/C, he received less out of cell time and outdoor exercise time than A1/A or A2/B inmates who had an assignment or who were on waiting lists for assignments. In 2004, inmates on C/C were released from their cells for breakfast at 6:10 a.m. Mondays through Fridays; at 9:15 a.m. inmates were released for showers before being released to yard at 10:15 a.m. and yard ends at 11:30 a.m., when inmates are recalled for lunch. On Saturdays, Sundays and holidays, C/C inmates are released for breakfast at 7:00 a.m. and return to their cells at 8:00 a.m. Showers begin at 9:15 a.m. and end for lunch and resume at 12:00 p.m. C/C inmates receive no yard on weekends.

Plaintiff does not appear to contend that he was deprived of sufficient outdoor exercise while he was in C/C group, but rather offers evidence relating to same as a comparison

to the amount of exercise provided to plaintiff while he was housed in the general population in groups A1/A or A2/B.  The court now turns to plaintiff's claim that the policy governing outdoor exercise at HDSP-IV violates the Eighth Amendment.

          c.  Policy of Outdoor Exercise

Defendants argue that they are entitled to summary judgment with respect to plaintiff's Eighth Amendment claims because plaintiff has failed to meet his burden in demonstrating he only received 104 hours of out of cell exercise during the period at issue where he does not dispute he was scheduled to receive 22 hours and 30 minutes of outdoor exercise a month from April 2002 through March 2003 while he was a general population prisoner in work/privilege group A2/B.  Rather, plaintiff appended 433 pages of housing logs as exhibits without reference to page number in his opposition.  Defendants argue that plaintiff has failed to identify the length of the alleged denials of exercise as well as any particular institutional reason for the denial of exercise.  Defendants argue that unusual circumstances may warrant the denial of outdoor exercise, such as inclement weather or safety and security concerns.  Spain v. Procunier, 600 F.2d at 199.

Plaintiff's allegations suggest that outdoor exercise for general population inmates at High Desert is limited pursuant to policy to the amount of outdoor exercise ordered for administrative segregation inmates in Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979). Although the court in Spain did not decide what amount of outdoor exercise is required to satisfy the constitution, this court previously found that the allegation that general population inmates are being provided with only the amount previously required for administrative segregation inmates is sufficient to raise an Eighth Amendment claim.

However, the instant case is distinguishable from Spain because the prisoners in Spain were completely deprived of outdoor exercise for five months and also had limited out-of-cell time and minimal contact with other persons.  Id.  In the instant case, it is undisputed that plaintiff was a general population inmate who was out of his cell for morning and evening meals,

and for showers. Defendants have provided evidence plaintiff also was permitted out-of-cell time in the evening in the day room of his housing unit.

Moreover, defendants' arguments concerning plaintiff's opposition are well taken. Plaintiff was admonished on several occasions that he must reference the housing logs by page numbers. (October 12, 2005 Order at 3; December 27, 2005 Order at 2.) Defendants' initial summary judgment motion was postponed to allow plaintiff time to access and review some 6,785 pages of housing logs. (September 22, 2005 Order at 2.) By December 27, 2005, plaintiff had reviewed the housing logs and determined that only the logs from C Facility Building 3 for the period of April 2002 through April 2003 were relevant to his claims herein. (December 27, 2005 Order at 1.) On January 6, 2006, plaintiff notified the court he had narrowed the pertinent housing logs to pages 2 through 450. (Id.) The court then cautioned plaintiff it was "his responsibility to sift through these housing logs if he believes that they contain evidence which support his case on summary judgment." (January 25, 2006 Order at 1.) Plaintiff's opposition was not filed until August 7, 2006. Thus, plaintiff had sufficient time to marshal the evidence to support his position. This court is not obligated "to scour the record" for potential triable issues of fact to which it was not specifically referred. Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1028-29 (9th Cir.2001); Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir.1996) ("[I]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." (citation and internal quotation marks omitted)).

Defendants have provided evidence of a policy governing outdoor physical exercise that is largely determined by the inmate's work/privilege group and whether or not the inmate had an assignment. (Defts.' May 10, 2005 MSJ, Attachment 1.)[3] Defendants state those inmates who have an assignment are out of their cells for over seven hours a day and have the

---

[3] The July 6, 2006 motion for summary judgment renewed defendants' May 10, 2005 motion for summary judgment and incorporated the briefing therefrom.

opportunity for outdoor exercise and evening day room on a regular basis. For those inmates who have no assignment, inmates leave their cells daily for meals and for showers and are provided regular outdoor exercise on a weekly basis. In addition, inmates in work group/privilege groups A1/A and A2/B also receive an hour and 45 minutes of time in the day room in the evening. (Defts.' May 10, 2005 MSJ, Ex. B at 2.)

Plaintiff does not dispute he was scheduled to receive 22 hours and 30 minutes of outdoor exercise a month from April 2002 through March 2003 while he was a general population prisoner in work/privilege group A2/B. Plaintiff has failed to provide evidence to demonstrate that the policy providing for this level of outdoor exercise violates the Eighth Amendment. Plaintiff has not demonstrated that this policy of outdoor exercise deprives inmates of the "minimal civilized measure of life's necessities." In addition, plaintiff has made no effort to demonstrate that defendants established the policy out of deliberate indifference to an excessive risk to inmate health and safety. Defendants have provided evidence that the policy was established in an effort to permit various groups of inmates with different schedules and security concerns safe access to outdoor physical exercise. Plaintiff has provided no evidence to refute that, nor legal authorities that require more access to outdoor physical exercise. Defendants are thus entitled to summary judgment on this claim. The court now turns to the question of whether plaintiff was specifically deprived of physical outdoor exercise in violation of the Eighth Amendment for those periods he was held in the general population.

d.  Work/privilege group A1/A with an assignment

Defendants contend that while plaintiff was in A1/A group, he was out of his cell for over seven hours a day and also had the opportunity for outdoor exercise and evening day room on a regular basis.

Plaintiff argues that he was "never provided . . . seven hours a day of out of cell programming." (Pl.'s Stmt. Undisputed Facts at 5.) Plaintiff cites Exhibit D as evidence to support this statement. (Id., Ex. D.)

Exhibit D, however, is a copy of an inmate job description, followed by two pages of "Inmate Work Supervisor's Time Logs," for plaintiff for the months of May 2003 and August 2003. Plaintiff does not explain how these documents support his position that he was not out of his cell for seven hours per day. At a minimum, these records demonstrate that plaintiff worked 6.5 hours in May of 2003 and zero hours in August of 2003. In that way, these two forms demonstrate plaintiff did not work 7 hours a day in May or August of 2003.[4] But these records do not demonstrate how long plaintiff was confined to his cell in either of these two months, or for any of the rest of the period he was assigned to group A1/A. Even assuming plaintiff was not at work seven hours a day for the entire period he was in group A1/A, plaintiff has not provided the court with specific evidence documenting what time frame he was permitted outdoor exercise during that period. Moreover, plaintiff has produced no evidence to refute defendants' evidence that inmates in work group A1/A also received an additional hour and 45 minutes of time in the day room in the evening. On this record, the court cannot find that plaintiff's Eighth Amendment rights were violated while he was in work group A1/A.

e. Work/privilege group A2/B awaiting an assignment

Defendants state that when he was unassigned, plaintiff had the opportunity to leave his cell each day and for regular outdoor exercise weekly.

Plaintiff contends that when he was in work group A2/B from April 30, 2002 to May 15, 2003 he only received 104 hours of outside exercise programming during that one year period. However, plaintiff did not articulate how he arrived at the 104 hour figure. Plaintiff has not broken out the 104 hours by day or by month; neither has he cited to specific housing logs that support an accumulation of that time period. Rather, plaintiff generically cites to 433 pages

/////

---

[4] In his declaration, plaintiff states that he "never worked the 6.5 hours depicted on [his] inmate work time log, and [his] supervisor only provided [him] those hours because the job had a pay number attached to it, and incentive to me not to complain about not being out of my cell." (Decl. at 3-4.)

13

of housing logs appended as Exhibit F.  On this record, plaintiff has not articulated the length of the alleged denial of exercise in such a way as to demonstrate a constitutional violation.

Moreover, as defendants noted, a cursory review of the housing logs provided by plaintiff demonstrate that unusual circumstances explained some of the restrictions placed on plaintiff's yard access.  (Pl.'s Ex. F, at 15-16 [lock down after discovery of multiple weapons]; 49 [lock down after stabbing]; 76, 82 [lock down]; 85 [due to homicide . . . no inmate movement].)  Temporary denials of outdoor exercise are permissible based on "inclement weather, unusual circumstances, or disciplinary needs."  Spain, 600 F.2d at 199.  Because Spain provides for temporary denials of outdoor exercise based on those unusual circumstances, plaintiff may only claim those periods where exercise was denied for other reasons.  Plaintiff has made no effort to differentiate the times he was not allowed outdoor exercise based on inclement weather, prison lockdowns or other unusual circumstances.  Thus, taking plaintiff's claim of 104 hours of outdoor exercise in one year as true, the court is unable to discern whether a constitutional violation has occurred because the record does not demonstrate the specific deprivations within that year, nor make clear those temporary deprivations permissible under Spain.  While at first blush it appears access to 104 hours of outdoor exercise in a one year period could be a patent deprivation of outdoor exercise, in the face of the evidence supporting temporary deprivations during that period and no clear breakdown of the 104 hours of exercise provided, it is not a conclusion that can be drawn on this record.

Thus, defendants are entitled to summary judgment.  It is undisputed that plaintiff was entitled to receive 22 hours and 30 minutes of outdoor exercise a month from April 2002 through March 2003 while he was a general population prisoner in work/privilege group A2/B.  Although plaintiff declares he received only 104 hours of outdoor exercise from April 2002 through March 2003, he has made no effort to demonstrate how he derived the 104 hour figure, nor account for those temporary deprivations of exercise permitted under Spain.  Plaintiff has not demonstrated a denial of outdoor physical exercise for an extended period sufficient to warrant

the grant of summary judgment in his favor. See e.g., Williams v. Greifinger, 918 F.Supp. 91, 98 (S.D.N.Y.) (plaintiff entitled to summary judgment on Eighth Amendment claim because he was deprived of exercise for 589 days), rev'd on other grounds, 97 F.3d 699 (1996); Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir.1996) (upholding preliminary injunction requiring prison officials to release inmate from medical keeplock when inmate allowed out of cell only ten minutes per week for over three-and-one-half years); cf. Allen v. Sakai, 48 F.3d 1082, 1086-88 (9th Cir.19945) (affirming district court's denial of qualified immunity where inmate allowed only forty-five minutes of outdoor exercise per week for period of six weeks and segregation was indefinite); Mitchell v. Rice, 954 F.2d 187, 192 (4th Cir.1992) (qualified immunity not appropriate because reasonable prison official should have known that depriving inmate of out-of-cell exercise for seven and eleven month periods would violate Eighth Amendment).

In addition, plaintiff has not established that the deprivations of access to outdoor physical exercise were not temporary. Defendants have provided evidence that unusual circumstances, such as lockdowns, were responsible for some of the restrictions on plaintiff's access to outdoor physical exercise. Plaintiff has not refuted that evidence. Relatively brief periods of exercise deprivation do not violate the Eighth Amendment. See, e.g., May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997)(deprivation of outdoor exercise for 21 days while in the Disciplinary Segregation Unit did not demonstrate a serious deprivation and deliberate indifference); Davidson v. Coughlin, 968 F.Supp. 121, 131 (S.D.N.Y.1997) (deprivation of outdoor exercise for 14 days did not violate Eighth Amendment); Arce v. Walker, 907 F.Supp. 658, 662-63 (W.D.N.Y.1995) (Eighth Amendment not violated when inmate in administrative confinement was deprived of out-of-cell exercise for 18 out of 19 days); Green v. Ferrell, 801 F.2d 765, 771-72 (5th Cir.1986) (Eighth Amendment not violated by policy denying inmates out-of-cell exercise for first 15 days of punitive confinement); cf. Hoptowit v. Ray, 682 F.2d 1237, 1258-59 (9th Cir. 1982)(denial of opportunity for regular outdoor exercise violates the Eighth Amendment, but can be temporarily denied under prison conditions that warrant it).

1    Moreover, it is also undisputed that while plaintiff was in group A2/B, plaintiff
2 was able to leave his cell for morning and evening meals and to shower.  Plaintiff has not refuted
3 defendants' evidence that he also was allowed to go to the day room every evening for a period
4 of time.  Thus, on this record, the court cannot find that plaintiff's Eighth Amendment rights
5 were violated.  Defendants' motion for summary judgment should be granted.
6    Accordingly, IT IS HEREBY RECOMMENDED that defendants' July 6, 2006
7 renewed motion for summary judgment be granted and this action be dismissed.
8    These findings and recommendations are submitted to the United States District
9 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty
10 days after being served with these findings and recommendations, any party may file written
11 objections with the court and serve a copy on all parties.  Such a document should be captioned
12 "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that
13 failure to file objections within the specified time may waive the right to appeal the District
14 Court's order.  Martinez v. Ylst, 95 1 F.2d 1153 (9th Cir. 1991).
15 DATED:  November 13, 2006.

UNITED STATES MAGISTRATE JUDGE

19 /001; fost1193.msj